**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nathaniel Robert Rodriguez, | No. CV-22-01955-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Nathaniel Robert Rodriguez's[1] Application for Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Brief (Doc. 16, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 20, "Def. Br."), and Plaintiff's Reply (Doc. 21). The Court has reviewed the briefs and the Administrative Record (Doc. 11, "R.") and now reverses the decision of the Administrative Law Judge ("ALJ") (R. at 36–48) as upheld by the Appeals Council (R. at 1–7).

**I.   BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on July 8, 2019, for a period of disability beginning August 1, 2013. (R. at 36.) Plaintiff's claims were initially denied on November 13, 2019, and upon reconsideration on February 4, 2020. (R. at 36.) Plaintiff then testified at a hearing held before an ALJ on September 22, 2021. (R. at

---

[1] During the hearing before the ALJ, Plaintiff identified himself as Nathaniel Nellis, using his step-father's surname. (R. at 57–58.)

56–95.) On November 23, 2021, the ALJ denied Plaintiff's Application (R. at 36–48), and on September 27, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. at 1–7). On November 17, 2022, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff had the following severe impairments: hypertension, autism, and schizophrenia. (R. at 38.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 39.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") "to perform light work" and "simple, routine tasks but not at a production rate pace." (R. at 41.) The ALJ further found that Plaintiff could "tolerate occasional changes in a routine work setting." (R. at 41.) Based on the vocational expert's answers to hypothetical questions, the ALJ concluded that Plaintiff could perform work as a housekeeper, a paper pattern folder, or a collator operator, and is not disabled under the Act. (R. at 48.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of

supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred by rejecting the medical opinions of a state agency examining psychologist, Plaintiff's examining psychologist, Plaintiff's treating cardiologist, and Plaintiff's treating psychiatrist, without adequately providing substantial evidentiary support or discussing the

supportability and consistency factors; (2) the ALJ erred by concluding that Plaintiff's postural orthostatic tachycardia syndrome ("POTS") was a non-severe impairment and by failing to consider Plaintiff's chronic fatigue syndrome as a medically determinable impairment; and (3) the ALJ erred by rejecting Plaintiff's symptom testimony without reasons supported by substantial evidence.

In response to Plaintiff's first argument, Defendant concedes that the ALJ erred and requests that the Court remand the case for the ALJ to conduct a new hearing, reconsider all the issues *de novo*, and issue a new decision. (Def. Br. at 2–3.) Plaintiff, however, asks the court to order remand for a calculation of benefits under the credit-as-true rule.

The credit-as-true rule only applies in cases that raise "rare circumstances" that permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* And third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

Here, the parties agree that the ALJ erred by failing to provide legally sufficient reasons for rejecting medical evidence, which satisfies the first element. The Court's decision thus turns on the second and third elements.

The second element is satisfied when the record is fully developed and further administrative proceedings would not be useful. *Treichler*, 775 F.3d at 1101. Plaintiff contends the record is fully developed, and Defendant does not seriously argue otherwise.

- 4 -

However, Defendant argues that further administrative proceedings would be useful to resolve the conflicts in medical opinion between Plaintiff's treatment providers and the agency's medical consultants, as well as any inconsistencies with Plaintiff's symptom testimony. (Def. Br. at 18–19.)

An Arizona state agency examining psychologist, Dr. Jonna L. Dunlap, Psy.D., examined Plaintiff. She reported that Plaintiff "prefers to be with others but often feels overwhelmed in social situations." (R. at 996.) Plaintiff reported to Dr. Dunlap that he has "difficulty with sustained focus for tasks," but she opined that he appeared "able to maintain attention for extended periods of time." (R. at 996, 1000.) Dr. Dunlap further opined that Plaintiff "likely would have difficulty responding to changes in a work setting." (R. at 1000.)

The ALJ found Dr. Dunlap's opinion "partially persuasive," citing generally to the report of Plaintiff's examining neuropsychologist, Dr. John Mather, Ph.D. (R. at 44–45.) In his report, Dr. Mather opined that "there may be many occasions in which [Plaintiff] presents as very capable of regulating and sustaining attention, inhibiting his responding and adapting or adjusting his thinking and behaviors." (R. at 1559.) But the ALJ did not acknowledge that Dr. Mather continued, "There may be other times that [Plaintiff] may struggle with starting, persisting in and completing activities. [Plaintiff] may struggle to self-direct and sustain his attention." (R. at 1559.) The ALJ further noted that the report of state agency psychological consultant, Dr. C. Eblen, Ph.D., stated that Plaintiff was "engaged in college classes and seem[ed] to acquire other skills at a slower pace." (R. at 122.) Dr. Eblen opined that Plaintiff could sustain "competitive, remunerative work . . . where there is relatively low interpersonal contact," and that he could "understand, carry out, and remember simple instructions" and "work consistently and at a reasonable pace for approximately 2 hour segments." (R. at 128.) These medical reports, therefore, require the ALJ to resolve inconsistencies as to Plaintiff's ability to sustain attention and complete work-related activities.

Likewise, the ALJ cited the medical assessment of Plaintiff's treating psychiatrist,

Dr. Nasser Djavadi, M.D. (R. at 45.) Dr. Djavadi noted that Plaintiff had mild to moderate limitations in understanding and memory, some severe limits in sustained concentration and persistence, some severe limits in social interactions, and some severe limits in adaption. (R. at 1044–1046.) The ALJ found this assessment unpersuasive, again citing Dr. Mather's report that there may be times when Plaintiff presents as very capable of sustaining attention and Dr. Eblen's report that Plaintiff was taking college classes and could sustain work at a reasonable pace for two-hour segments. (R. at 45.) Again, these medical reports contain inconsistencies that the ALJ must resolve.

The ALJ also cited the medical assessments of Plaintiff's treating cardiologist, Dr. Shabib Alhadheri. (R. at 45.) Dr. Alhadheri opined that Plaintiff suffers from severe fatigue that precludes his ability to function. (R. at 1042.) Dr. Alhadheri further opined that Plaintiff suffered from POTS, as confirmed by a tilt-table test. (R. at 1519.) The ALJ found Dr. Alhadheri's opinions "unpersuasive," noting that Plaintiff's fatigue did not prevent him from completing college coursework or doing chores. (R. at 45.) The ALJ also found that Plaintiff's POTS was "resolved" per a past medical history report from a 2021 hospitalization (R. at 1965) and an unremarkable tilt-table test from 2018. (R. at 1879). Even if, as Plaintiff now argues, the ALJ cherry-picked evidence to support his conclusions, that evidence creates inconsistencies for the ALJ to resolve.

The ALJ also rejected some of Plaintiff's symptom testimony. The ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms is not entirely consistent with the medical evidence." (R. at 42.) The ALJ explained only that Plaintiff's testimony was "inconsistent because the evidence generally does not support the alleged loss of functioning" then recounted, without opinion, that Plaintiff had been taking antipsychotic medication but weaned himself off it and transitioned to naturopathic treatment. (R. at 42.) Although Plaintiff did well for some time, his psychosis eventually worsened until he recontinued the antipsychotic medication. (R. at 42–43.) Since then, his symptoms abated. (R. at 43.)

Plaintiff argues that the ALJ's recitation of medical evidence is insufficient to discount his symptom testimony and, to the extent the ALJ's reasoning was founded on Plaintiff's discontinuation and recontinuation of antipsychotic medication, the ALJ's reasoning is flawed considering that Plaintiff is mentally ill. (Pl. Br. at 25–26.) The Court agrees with Plaintiff that a general recitation of medical evidence is insufficient reasoning to discount symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (explaining that "[g]eneral findings are insufficient" and "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints" (citation omitted)). The Court also agrees with Plaintiff that it would be unwise for an ALJ to criticize a mentally ill claimant's inconsistent medication schedule. *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (noting that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" (citation omitted)). Nevertheless, because the ALJ merely recited Plaintiff's treatment history without reasoning, the Court cannot conclude that the ALJ erred by discounting Plaintiff's testimony on that basis. And despite the ALJ's inadequate explanation, there remain inconsistencies between portions of the overall record—such as a hospital record that states Plaintiff's fatigue necessitates daily naps—and Plaintiff's testimony—such as his claim that he does not have to nap every day. (R. at 543, 67.) Such inconsistencies require the ALJ to resolve them with adequate reasoning.

Accordingly, the Court finds that further administrative proceedings would be useful to resolve various inconsistencies in the record. Therefore, remand under the credit-as-true rule is inappropriate, and the ordinary remand rule applies. Because the Court remands for a new hearing and reconsideration of all the issues *de novo*, the Court need not address Plaintiff's remaining arguments.

**IT IS THEREFORE ORDERED** reversing the decision of the ALJ (R. at 36–48) as upheld by the Appeals Council (R. at 1–7).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with the Order and close this case.

Dated this 1st day of December, 2023.

*[signature]*
Honorable John J. Tuchi
United States District Judge